UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>              Plaintiff,<br><br>v.<br><br>JOSEPH A. PADILLA and KEVIN C. DILLS,<br>              Defendants,<br><br>and<br><br>BRIGHT STAR INTERNATIONAL, INC., LIFE SCIENCES JOURNEYS, INC., CARLOS HERNANDEZ, JAMIE QUICK, ASHLEY ROBINSON, AND ARLENE SANDOVAL,<br><br>              Relief Defendants. | Case No. 23-cv-11331-RGS |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PERMANENT
PENNY STOCK BAR AND CONDUCT-BASED INJUNCTION
AGAINST DEFENDANT JOSEPH PADILLA**

Michael C. Moran
Kathleen B. Shields
*Attorneys for Plaintiff*
*Securities and Exchange Commission*
33 Arch Street, 24th Floor
Boston, MA  02110
Phone: (617) 573-8931 (Moran direct)
        (617) 573-8904 (Shields direct)
Email:  moranmi@sec.gov
         shieldska@sec.gov
Facsimile: (617) 573-4590

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**BACKGROUND** ........................................................................................................................ 1

**ARGUMENT** .............................................................................................................................. 6

    I.    The Court Should Impose a Permanent Penny Stock Bar Against Padilla ................................ 6

    II.    The Court Should Impose a Conduct-Based Injunction Against Padilla ................................ 10

**CONCLUSION** ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*SEC v. Ahmed*, 72 F.4th 379 (2d Cir. 2023) .................................................................................. 12
*SEC v. Bankosky*, 713 F.3d 45 (2d Cir. 2013) ................................................................................ 7
*SEC v. Babini,* 1:15-cv-13348-IT, 2024 WL 4335252 (D. Mass. Sept. 27, 2024) ..................... 2, 8
*SEC v. Chan,* 465 F. Supp. 3d 18 (D. Mass. 2020) ........................................................................ 8
*SEC v. Chappell,* 107 F.4th 114 (3d Cir. 2024) ............................................................... 11, 12, 13
*SEC v. Gentile,* 939 F.3d 549 (3d Cir. 2019) ............................................................................... 12
*SEC v. Gomes,* No. 20-cv-11092-FDS (D. Mass. Dec. 4, 2020, Sept. 9, 2021) ........................... 13
*SEC v. Landis et al.*, 18-cv-12453 (D. Mass. Aug. 7, 2019) ........................................................ 13
*SEC v. Lemelson,* 57 F.4th 17 (1st Cir. 2023) .......................................................................... 9, 12
*SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082 (2d Cir. 1972) .......................................... 12
*SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995) ....................................................................................... 7
*SEC v. Sargent,* 329 F.3d 34 (1st Cir. 2003) ............................................................................ 9, 12
*SEC v. Shah,* No. 22-cv-03012-JGLC (S.D.N.Y. July 21, 2022) ................................................ 13
*SEC v. Sharp,* --- F. Supp. 3d, WL 3030345 (D. Mass. June 17, 2024) ................... 8, 9, 11, 12, 13
*SEC v. Smith*, No. 14-cv-192-PB, 2015 WL 4067095 (D.N.H. July 2, 2015) ............................. 11
*SEC v. Spencer Pharm.*, No. 12-cv-12334-IT, 2015 WL 5749436 (D. Mass. Sep. 30, 2015) ....... 6
*SEC v. Stubos*, No. 22-cv-04674 (S.D.N.Y. Sept. 8, 2023) ......................................................... 13
*SEC v. Universal Exp., Inc.,* 475 F. Supp. 2d 412 (S.D.N.Y. 2007) .............................................. 7
*SEC v. Wall,* 2020 WL 1539919, 2020 U.S. Dist. LEXIS 56152 (D. Me. Mar. 31, 2020) ............ 8
*SEC v. Weed*, 315 F. Supp. 3d 667 (D. Mass. 2018) .................................................................. 6, 7
*SEC v. Zenergy Int'l, Inc.*, No. 13-CV-5511, 2016 WL 5080423 (N.D. Ill. Sep. 20, 2016) .......... 7
*Starbucks v. McKinney,* 144 S. Ct. 1570, 1576 (2024) ............................................................... 11
*Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008) ............................................... 11, 12, 13

**Statutes**

15 U.S.C. §78u ................................................................................................................... 6, 10, 11
15 U.S.C. §77t .......................................................................................................................... 6, 10
15 U.S.C. §78c ................................................................................................................................ 6

**Rules**

17 C.F.R. §240.3a51-1 .................................................................................................................... 6

**PRELIMINARY STATEMENT**

Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its motion for entry of a final judgment imposing a permanent penny stock bar and conduct-based injunction against defendant Joseph A. Padilla ("Padilla"). The Court has previously entered a partial judgment against Padilla that was the product of a settlement between the parties. *See* Dkt. Nos. 53-54. The partial judgment imposed a penny stock bar against Padilla but left its duration to further briefing by the parties and a determination by the Court. The partial judgment also left open whether the Court should enter a conduct-based injunction that would permanently enjoin Padilla from activity similar to that prohibited by the penny stock bar but with securities that may not qualify as penny stocks.

For the reasons set forth below, the Commission respectfully requests that the Court enter an order that: (1) permanently bars Padilla from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock; and (2) permanently enjoins Padilla from directly or indirectly, including, but not limited to, through an entity owned or controlled by Padilla, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Padilla from purchasing or selling securities listed on a national securities exchange for his own personal accounts.

**BACKGROUND**

Padilla, a former stockbroker, is a repeat securities law violator in the area of penny stocks. The Commission first charged him in 2011 for violation of the registration requirements of the federal securities laws in connection with a penny stock scheme. The Commission subsequently barred Padilla from the brokerage industry in 2012. In 2023, the Commission

brought this action against Padilla.  The current action involves Padilla's multifaceted fraudulent scheme, which lasted from at least February 2020 through August 2022 and involved at least seven different penny stocks (the "Seven Stocks").  In a related criminal action, Padilla pleaded guilty in August 2023 before this Court to securities fraud and conspiracy to commit securities fraud in a scheme to fraudulently sell two of the seven penny stocks involved in the Commission's action.  The Court sentenced Padilla to a 66-month period of incarceration and ordered forfeiture of $3 million.  *U.S. v. Padilla,* 23-cr-10075-RGS, Dkt. Nos. 166, 168.

In pleading guilty, Padilla admitted that he and "others endeavored to make money by participating in stock manipulation schemes involving the concealed-control of significant amounts of stock of the microcap companies Oncology Pharma, Inc. and Charlestowne Beverages, Inc."  *Padilla,* 23-cr-10075-RGS, Dkt. No. 136, at 9 (Ex. A).  Padilla admitted that his role in these schemes was to "act as the principal stock trader" and that he "used brokerage accounts in his name and in others' names to trade in a manner designed, at least in part, to cause the companies' stock prices to artificially increase."  *Id*.  Further, "Padilla thereafter orchestrated the sale of millions of shares of the companies' stock during promotional campaigns" and the "stock being sold was held in multiple different brokerage accounts for the benefit of Padilla's clients, thereby obscuring the fact that the stock was under common control."  *Id*.

Padilla's fraudulent activity with all Seven Stocks was consistent with his criminal conduct related to Oncology Pharma and Charlestowne Beverages.  Padilla's broader scheme included hiding his clients' identities by selling stock for them through offshore brokerage accounts that he controlled, but that he opened in different names (described in the Complaint as "Padilla Nominees").[1]  Complaint, Dkt. No. 1, at ¶¶ 2, 20, 36-39, 87.  Padilla's stock sales took

---

[1] Padilla agreed that for purposes of this motion, the allegations of the Commission's Complaint are accepted as and deemed true by the Court.  *See* Dkt. No. 53-2 at ¶ 4; Dkt. No. 54 at 5; *see also SEC v. Babini*, 1:15-cv-13348-IT,

2

place during periods of increased investor demand driven by promotional activity. *Id*. at ¶¶ 2, 43, 63, 111. Padilla supported his clients' sales by manipulating stock prices through trading in his own brokerage account and in the accounts of friends and family. *Id*. at ¶¶ 2, 40-43. Padilla profited by $139,685 from this trading in his own brokerage account. *Id.* at ¶¶ 77, 85, 105, 110. Padilla agreed to disgorge the $139,685 in his settlement with the Commission. Dkt. Nos. 53-54. Further, Padilla enlisted in his scheme James Anglim, a professional stock trader at a brokerage firm, to secretly facilitate large stock sales by Padilla's clients. Dkt. No. 1 at ¶¶ 2, 44-47; *see also* Dkt. No. 60 (Declaration of James P. Anglim).

As noted above, this is not the Commission's first action against Padilla for misconduct relating to penny stocks. In December 2011, the Commission brought an action against Padilla and others for their roles in a fraudulent stock selling scheme involving a penny stock. *SEC v. Ruettiger, et al.*, 2:11-cv-2011 (D. Nev., filed Dec. 16, 2011) (Ex. B). At the time relevant to that action, Padilla was a registered representative of a broker-dealer located in the United States. *Id*. at ¶¶ 17, 27. The *Ruettiger* complaint alleged that Padilla, acting as a broker-dealer representative, sold unregistered shares of the penny stock. *Id.* at ¶¶ 49, 51, 54, 118. Foreshadowing his use of nominee accounts in this case, Padilla sold shares through a brokerage account belonging to a Nevada corporation that Padilla controlled with another defendant. *Id*. at ¶¶ 29, 65. The Commission charged Padilla with violating the registration provisions of Section 5 of the Securities Act of 1933 because Padilla sold shares into the public market in transactions that were not registered or subject to a valid exemption from registration. *Id*. at ¶¶ 125-27.

Without admitting or denying the allegations in the complaint, Padilla consented to entry of a judgment in 2012. Ex. C. Among other relief, the District of Nevada's judgment

---

2024 WL 4335252, at *2 (D. Mass. Sept. 27, 2024) (taking complaint's allegations as true as agreed by defendant and imposing permanent penny stock bar).

3

permanently restrained and enjoined Padilla from violations of Sections 5(a) and 5(c) of the Securities Act and barred him for a period of three years from participating in an offering of penny stock. Ex. D. The three-year penny stock bar prohibited Padilla from engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock. *Id*.

In 2012, Padilla agreed to entry of a Commission order that barred him from being associated with any broker-dealer with a right to apply for reentry after three years. Ex. E. Padilla remains barred from the brokerage industry to this day. Ex. A at 9 (describing Padilla as former stockbroker who was barred by Commission in 2012). Before being barred, Padilla worked at multiple brokerage firms dating back to 1991. Dkt. No. 1 at ¶ 9.

By 2020, Padilla was engaged in fraudulent penny stock activity through an offshore brokerage firm named Valor Capital. In his guilty plea, Padilla admitted that Valor Capital was a "Cayman Islands broker" with which he "had a close, unofficial association." Ex. A at 9. More specifically, while Padilla's association with Valor Capital may have been "unofficial," that was by design. Padilla liaised with Valor Capital through his longtime "right-hand man" who, among other things, directed Valor Capital's trading activity. Dkt. No. 1 at ¶ 18. Through that individual, Padilla directed trading activity in Valor Capital accounts that Padilla secretly controlled. *Id*. at ¶¶ 17, 20, 38, 39, 87-88. Padilla engaged in manipulative trading to increase stock prices to a minimum required before Valor Capital could deposit and then sell stock. *Id*. at ¶ 41. Accounts that Padilla controlled at Valor Capital sold millions of shares through Valor Capital for proceeds of tens of millions of dollars. *E.g., id.* at ¶¶ 64, 77, 85, 98, 101, 102, 110. Sales of Oncology Pharma shares at Valor Capital alone amounted to proceeds of well over $100

million.  Id. at ¶ 64.  Valor Capital "generated millions of dollars in commissions on the [Oncology Pharma] share sales, which commissions Padilla expected to share in."  Ex. A at 10.

After arranging for accounts at Valor Capital to take deposit of, and then sell, shares of stock, Padilla distributed proceeds to his clients.  Dkt. No. 1 at ¶ 38.  Padilla distributed proceeds to clients via bank accounts in Russia and Kyrgyzstan that were titled in the same names as accounts at Valor Capital.  Id. at ¶¶ 38, 48-50.  Padilla communicated with his liaison at Valor Capital regarding client money movement as recently as August 2022, the month that he was arrested.  Id. at ¶ 50.  Padilla-controlled accounts at Valor Capital also distributed proceeds to his clients via crypto assets, which made the ownership of those proceeds, and their ultimate destinations, more difficult to trace.  Id. at ¶ 38.

Padilla's illegal conduct often involved communicating through an encrypted messaging application that allows users to destroy sensitive messages and permits a sender to destroy a message on the recipient's end.  Dkt. No. 1 at ¶ 37.  In one such message, Padilla told a person involved in his scheme to communicate by the messaging application, "[s]o messages can't be used against us."  Id.  Padilla communicated with Anglim via the encrypted messaging application and Padilla used a codename.  Id. at ¶ 47.  Similarly, Padilla liaised with his right-hand man at Valor Capital via secretive messaging applications and using codenames.  Id. at ¶ 39.

In his guilty plea, Padilla also pleaded guilty to one count related to his attempt to acquire a fraudulent Ukrainian passport bearing his photograph.  Ex. A at 1, 9.  Padilla admitted that "[a]fter being arrested in August 2022 on a criminal complaint concerning the Charlestowne scheme, Padilla attempted to acquire a fraudulent Ukrainian passport."  Id. at 10.

5

**ARGUMENT**

I. **The Court Should Impose a Permanent Penny Stock Bar Against Padilla.**

The Court is authorized by Section 20(g) of the Securities Act and Section 21(d)(6) of the Exchange Act to bar any person from participating in future offerings of penny stocks "for such period of time as the court shall determine" if that person was participating in the offering of a penny stock at the time of the misconduct. *See* 15 U.S.C. §§77t(g)(1); 78u(d)(6)(A); *see also SEC v. Weed*, 315 F. Supp. 3d 667, 677-78 (D. Mass. 2018) (imposing permanent penny stock bar); *SEC v. Spencer Pharm.*, No. 12-cv-12334-IT, 2015 WL 5749436, at *8 (D. Mass. Sept. 30, 2015) (same). A "person participating in an offering of penny stock" includes "any person engaging in activities with a broker, dealer or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of, any penny stock." 15 U.S.C. §§77t(g)(2); 78u(d)(6)(B).

It is undisputed that the Seven Stocks were penny stocks. *See* Dkt. No. 1 at ¶ 28. A "penny stock" is defined in Section 3(a)(51) of the Exchange Act and in Rule 3a51-1 thereunder as equity securities that do not meet certain exemptions (essentially stocks not trading on a national securities exchange and that trade under $5 per share, and whose issuers do not meet certain asset or revenue thresholds). *See* 15 U.S.C. §78c(a)(51); 17 C.F.R. §240.3a51-1.

Padilla's scheme involved his "participating in an offering of penny stock" through illegal conduct involving each of the Seven Stocks. Specifically, Padilla engaged in activity with brokers, including Valor Capital and James Anglim, for purposes of trading or inducing others to purchase penny stocks. Valor Capital registered as a broker-dealer in the Cayman Islands by no later than January 2020. Dkt. No. 1 at ¶ 17. Anglim was a registered representative of a broker-dealer firm during his dealings with Padilla. Dkt. No. 60 at ¶¶ 2, 5. Padilla's scheme also

6

involved engaging in activities directly with at least one issuer, Oncology Pharma, for purposes of issuing stock, trading stock, or inducing others to purchase stock. Padilla schemed with Kevin Dills to sell stock of Oncology Pharma, which Dills secretly controlled. Dkt. No. 1 at ¶¶ 3, 30. Dills provided stock for Padilla to sell to the public by transferring shares to Padilla Nominees. *Id*. at ¶¶ 3, 51-57.

"The standard for imposing [a penny stock] bar essentially 'mirrors that for imposing an officer-or-director bar.'" *Weed,* 315 F. Supp. 3d. at 677-78 (quoting *SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007)). This standard includes: "(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *Id.* (citing *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

The *Patel* factors cited in *Weed* are "neither mandatory or exclusive," and a "district court may determine that some of those factors are inapplicable in a particular case and it may take other relevant factors into account." *SEC v. Bankosky*, 716 F.3d 45, 48-49 (2d Cir. 2013). Accordingly, even where a defendant does not occupy a traditional role or position of authority and trust while engaged in the fraud, the entry of a penny stock bar is appropriate. *See, e.g., SEC v. Zenergy Int'l, Inc.*, No. 13-CV-5511, 2016 WL 5080423, *8 (N.D. Ill. Sept. 20, 2016) (imposing penny stock bar against defendant who promoted stock). Each of the *Patel* factors are met here:

*Egregiousness of the Offense.* Padilla repeated his fraudulent scheme with seven different stocks, in varying time periods spanning a period of at least two years. Padilla used other individuals to act as nominees so that Padilla and his clients could secretly sell large amounts of

7

stock in violation of the securities laws. His fraudulent scheme involved the sale of millions of shares of stock, sales proceeds of tens of millions of dollars, and millions of dollars in trading commissions for Valor Capital in which Padilla expected to share. These facts all weigh heavily in favor of a finding that Padilla acted egregiously. *See SEC v. Sharp,* --- F. Supp. 3d ----, 2024 WL 3030345, at *4, *8 (D. Mass. June 17, 2024); *see also Babini*, 2024 WL 4335252, at *2 (imposing permanent penny stock bar where defendant's conduct was "egregious and demonstrated a high degree of scienter, and [defendant] played a central role and had a significant economic stake in the fraud").

In *Sharp*, Judge Young imposed a penny stock bar and a conduct-based injunction upon defendants in a penny stock scheme. *Sharp,* 2024 WL 3030345, at *4, *7-8. The court found that defendants' "securities laws violations were egregious and of a repeated nature" where they "directly and personally profited from the scheme," which involved the "fraudulent sale of more than $144 million worth of penny stocks." *Id.* at *4 (internal citation omitted). The court also cited the "deceit undergirding . . . the pump-and-dump schemes," which, as here, involved concealing stock ownership. *Id*. at *3-4. While the schemes involved in *Sharp* lasted for a decade, the court noted that "[c]ourts in this district and others have not hesitated to impose permanent injunctive relief against securities law violations much shorter in duration." *Id.* at *4 (citing *SEC v. Chan*, 465 F. Supp. 3d 18, 38 (D. Mass. 2020) (Burroughs, J.) and *SEC v. Wall*, 2020 WL 1539919, at *8, 2020 U.S. Dist. LEXIS 56152, at *25 (D. Me. Mar. 31, 2020)).

*Defendant's Repeat Offender Status*. This is not the first time Padilla has been involved in a penny stock scheme. Rather than being chastened by his three-year penny stock bar from the *Ruettiger* action and his subsequent bar from the brokerage industry, Padilla thereafter engaged in a sophisticated, brazen, multi-part scheme, concentrating his activities outside of the

8

United States while targeting the U.S. securities markets.

*Scienter*. Padilla acted with the highest degree of scienter. He has not only pleaded guilty to criminal charges for two of the Seven Stocks, he did so after attempting to procure a false passport after his indictment for criminal securities fraud. Padilla took pains to hide his involvement in his stock selling schemes, including by using nominee accounts, communicating via secretive messaging applications, and using a codename. While the use of a secretive messaging application can theoretically have legitimate purposes, Padilla wrote to another person involved in the scheme to use it "[s]o messages can't be used against us."

*Economic Stake in the Transaction.* Padilla admitted in his guilty plea that he expected to share in Valor Capital's commissions and agreed to criminal forfeiture of $3 million. Padilla also profited by $139,685 from manipulative trading in his own brokerage account as part of the scheme, which the Court has ordered him to disgorge as part of his settlement.

*Likelihood that Misconduct will Recur.* There is a reasonable likelihood that Padilla "will, owing to [his] occupation, be in a position to violate again." *See SEC v. Lemelson*, 57 F.4th 17, 30-31 (1st Cir. 2023) (citing *SEC v. Sargent*, 329 F.3d 34, 39 (1st Cir. 2003)). Padilla is currently serving a period of incarceration, but it is reasonably likely that he will engage in the same misconduct in the future. Padilla worked in the brokerage industry for twenty years before being barred in 2012. He then covertly engaged in stock trading activity beginning by no later than 2020. Padilla was engaged in his fraudulent scheme up until the time of his arrest in August 2022. In light of his stock trading experience spanning 30 years prior to his arrest, and the lack of any indication that he has otherwise been gainfully employed, the Court should find that there is a reasonable likelihood that Padilla will have the opportunity to engage in similar misconduct again unless enjoined. *See Sharp*, 2024 WL 3030345, at *5 n.4 ("defendants have significant

9

experience in the securities industry, rendering a future violation more likely than not").

The three-year penny stock bar imposed upon Padilla in *Ruettiger* did not deter him from future fraud involving penny stocks. Similarly, the Nevada court's injunction against future violations of Section 5 of the Securities Act did not deter Padilla from again violating Section 5 in this case. Dkt. No. 1 at ¶¶ 118-20. Padilla's disregard for prior injunctive relief weighs heavily in favor of finding it reasonably likely that he will engage in future misconduct involving penny stocks, and that the Court should enter a permanent penny stock bar.

## II.  The Court Should Impose a Conduct-Based Injunction Against Padilla.

The existing judgment permanently enjoins Padilla from future violations of the statutory provisions charged in the Commission's Complaint. Dkt. No. 54. The Commission now seeks entry of a conduct-based injunction that would prohibit Padilla from engaging in specific activity that could lead to future violations of the securities laws. Dkt. No. 1, at Prayer for Relief, ¶ V. The proposed conduct-based injunction would prohibit Padilla from the type of activity prohibited by a penny stock bar, but would also extend to other securities that may not qualify as a penny stock. The injunction would preserve Padilla's ability to purchase and sell some securities for his own account, but only securities listed on a national securities exchange. This limitation is designed to avoid Padilla personally trading, as he did here, in securities that are thinly traded and susceptible to price manipulation. Dkt. No. 1 at ¶ 32. Securities listed on national exchanges (like the New York Stock Exchange) often have very large market capitalizations and numbers of shareholders, so that manipulating the price and volume of those stocks is more challenging.

The Commission may seek, and a court may impose, a conduct-based injunction under Securities Act Section 20(b) [15 U.S.C. § 77t(b)] and Exchange Act Section 21(d)(1) [15 U.S.C.

10

§ 78u(d)], as well as under the broad equitable powers granted to courts by the Exchange Act. *See* 15 U.S.C. § 78u(d)(5) (permitting a federal court to grant "any equitable relief that may be appropriate or necessary for the benefit of investors"). The standard for entering a conduct-based injunction is the same as that for other permanent injunctive relief in Commission actions. *Sharp*, 2024 WL 3030345, at *7;*see also SEC v. Smith*, No. 14-cv-192-PB, 2015 WL 4067095, at *10 (D.N.H. July 2, 2015) (permanent injunctions and conduct-based injunctions are the "appropriate remedy to prevent [defendant] from committing further violations of the securities laws").

To obtain permanent injunctive relief, the Commission must demonstrate that: (1) the Commission has actually succeeded on the merits, (2) irreparable harm will likely result in the absence of the injunction, (3) the balance of the equities tips in the Commission's favor, and (4) the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (factors pertinent in assessing preliminary or permanent injunctive relief); *see also Starbucks v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (noting that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity," which, with regard to injunctive relief, includes using "the traditional four-part test" set forth in *Winter*); *SEC v. Chappell*, 107 F.4th 114, 128 (3d Cir. 2024) (applying *Starbucks* to a Commission enforcement action).

Each of the four factors support injunctive relief here. *First*, Padilla does not contest that he violated the federal securities laws as alleged in the Complaint. Dkt. No. 53-2 at ¶ 4; Dkt. No. 54 at 5, ¶ V.

11

*Second*, the likelihood of irreparable harm is demonstrated by the Commission having shown the likelihood of defendant's future violations. To obtain an injunction against further securities law violations, the Commission must show a "likelihood of recurrence" (*see SEC v. Gentile*, 939 F.3d 549, 555-58 (3d Cir. 2019)), and such "cognizable risk of future harm" satisfies the "irreparable harm requirement." *Chappell*, 107 F.4th at 128-29 (discussing *Gentile*). In determining whether there is a reasonable likelihood of future violations, courts consider: "(1) the 'nature of the violation, including its egregiousness and its isolated or repeated nature,' (2) 'whether the defendants will, owing to their occupation, be in a position to violate again,' and (3) 'whether the defendants have recognized the wrongfulness of their conduct.'" *Lemelson*, 57 F.4th at 30 (quoting *Sargent*, 329 F.3d at 39).

As discussed with regard to entry of a penny stock bar, it is reasonably likely that Padilla will again engage in fraudulent conduct in the securities market unless specifically enjoined. Padilla's conduct involved a high level of deceit, and he repeated his scheme with seven different stocks over a period of at least two years. Padilla has also had a lengthy career (both overt and clandestine) in the stock market. While Padilla may have admitted the wrongfulness of his conduct by pleading guilty, and he later reached a partial settlement with the Commission, he did so only after attempting to flee with a false passport after his indictment.

The third *Winter* factor, balancing the equities, favors the Commission because "investors need[] the protection of an injunction" notwithstanding the private interests of the defendant, especially in light of the likelihood of Padilla's future fraud violations. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1102 (2d Cir. 1972), *abrogated on other grounds*, *SEC v. Ahmed*, 72 F.4th 379, 406-07 (2d Cir. 2023); *see also Sharp*, 2024 WL 3030345, at *7 (noting conduct-

based injunction would restrain defendants from professional securities activity while preserving ability to trade personally).

Finally, as to the fourth *Winter* factor, "[a]s a practical matter, if a plaintiff demonstrates both actual success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Chappell*, 107 F.4th at 139 (quotation omitted). The public interest in enforcing the securities laws favors enjoining Padilla. Padilla purposefully deceived investors regarding the nature of the stock that they were buying, and who they were buying it from, and his conduct involved manipulation of securities prices. Padilla's scheme violated the core securities registration and anti-fraud provisions of the federal securities laws.

This Court has also issued this same requested conduct-based injunction against Kevin Dills in a prior consent judgment in this case. Dkt. No. 19 at 4, ¶ IV. Other courts, including in this District, have entered such relief against defendants engaged in similar types of penny stock fraud. *See, e.g., Sharp,* 2024 WL 3030345, at *7; *SEC v. Stubos*, No. 22-cv-04674, Dkt. No. 69, ¶ V (Ex. F, S.D.N.Y., judgment entered Sept. 8, 2023); *SEC v Shah, et al.,* No. 22-cv-03012-JGLC, Dkt. No. 33, ¶ IV (Ex. G, S.D.N.Y., bifurcated judgment entered July 21, 2022); *SEC v. Gomes, et al.,* No. 20-cv-11092-FDS, Dkt. No. 60, ¶ VI.; Dkt. No. 80, ¶ V (Exs. H and I, D. Mass., judgments entered Dec. 4, 2020 and Sept. 9, 2021); *SEC v. Landis et al.*, 18-cv-12453-IT, Dkt. No. 22, ¶ IV (Ex. J, D. Mass., bifurcated judgment entered Aug. 7, 2019).

The proposed conduct-based injunction would prohibit Padilla from future activity in securities that are more prone to manipulation because they are not listed on a national securities exchange. The injunction is appropriate and tailored to Padilla's extensive misconduct in this case, which involved manipulative trading in the Seven Stocks over a period of at least two

13

years. This relief will protect investors by reducing the risk that Padilla will repeat his misconduct beyond penny stocks.

## **CONCLUSION**

For the reasons stated above, the Commission respectfully requests that the Court enter a Final Judgment imposing a permanent penny stock bar upon Padilla and permanently enjoining him from directly or indirectly, including, but not limited to, through an entity owned or controlled by Padilla, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Padilla from purchasing or selling securities listed on a national securities exchange for his own personal accounts.

Dated: December 20, 2024

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,

*/s/ Michael C. Moran*
Michael C. Moran (Mass. Bar No. 666885)
Kathleen B. Shields (Mass. Bar No. 637438)
Securities and Exchange Commission
33 Arch Street, 24th Floor
Boston, MA  02110
Phone: (617) 573-8900
Facsimile: (617) 573-4590
Email:  moranmi@sec.gov
          shieldska@sec.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 20th day of December 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system. I will separately serve the document upon parties not registered to receive electronic notice through the CM/ECF system.

                                            */s/ Michael C. Moran*
                                            Michael C. Moran